Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 96 C 5123 | DATE | 06/09/2003 |
| CASE TITLE | | Ware v. McAdory | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Amended Petition for a Writ of *Habeas Corpus* (doc. # 49)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]. Enter memorandum opinion and order. For the attached reasons, the Petitioner's request for a writ of *habeas corpus* (doc. #49) is DENIED and the case is dismissed.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: JHC

Date/time received in central Clerk's Office

date docketed: JUN 10 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LAMONT WARE,  )
　)
　Petitioner,  )
　)  No. 96 C 5123
v.  )
　)  Judge William J. Hibbler
EUGENE MCADORY, Warden[1]  )
　)
　Respondent.  )

DOCKETED
JUN 1 0 2003

## MEMORANDUM OPINION AND ORDER

Petitioner Lamont Ware filed a *habeas corpus* petition, 28 U.S.C. §2254, claiming ineffective assistance of both trial and appellate counsel. Ware also raises a number of claims that are not cognizable in a petition for *habeas corpus*. For the following reasons, Ware's petition is DENIED.

I.　Factual Background

Ware does not challenge the statement of facts set forth in the Illinois Appellate Court opinion affirming the decision of the Circuit Court of Cook County, thus those facts are presumed correct for the purposes of this Court's review. *Mahaffey v. Schomig*, 294 F.3d 907, 915 (7th Cir. 2002); 28 U.S.C. §2254(e)(1). The underlying facts are set forth by the Illinois Appellate Court in *People v. Ware*, 264 Ill. App. 3d 650, 636 N.E.2d 1007 (1994) and need not be fully repeated here.

On November 12, 1990, an employee at McDonald's Fishery arrived for work and found the bodies of Ulysses McDonald, the owner, and Leroy Taylor. Each had died of a single gunshot wound

---

[1] Eugene McAdory is currently the Warden at the Menard Correctional Center and is thus the proper respondent in this *habeas* action. *See* Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. This Court hereby substitutes McAdory as the respondent. *See* Fed. R. Civ. P. 25(d)(1).

1



to the head. On December 25, 1990, Luther Ware, the petitioner's uncle, told the police about an argument he had with the petitioner where the petitioner stated that he had killed someone. The police questioned petitioner Ware and arrested him after he confessed to murdering McDonald and Taylor.

Lamont Ware's confession revealed that he had worked in McDonald's fishery since 1987 and that on November 10, 1990, he went to the fishery and spent the day cooking, drinking and smoking a marijuana and cocaine mixture with McDonald and Taylor. Ware felt that McDonald was taking more than his share of the marijuana. Ware retrieved a .32 caliber handgun that McDonald had placed in a drawer in the fishery and hid it in his pocket while he decided whether to shoot McDonald. Ware also admitted that he was angry with McDonald because McDonald had forced him to engage in oral sex with him in April 1988. The defendant confessed that "everything began to come down on him" and that "he would have to do what he had to do." Sometime between 12:30 a.m. and 1:00 a.m. on November 11, 1990, Ware shot McDonald once in the head from a distance of three feet. Taylor had been asleep but he woke up and Ware shot him once in the eye because he did not want Taylor to identify him later.

Ware did his best to conceal the crime, wiping off surfaces that might contain a fingerprint and throwing away keys and expended bullet shells. Ware then walked to 61st and Calumet and attempted to sell the handgun, but instead was arrested for unlawful use of a weapon. Because the bodies of McDonald and Taylor had yet to be discovered, the police did not connect Ware to the crime at the time of his November 11 arrest. In his December confession, Ware told an assistant state's attorney that he knew he had committed premeditated murder "because he thought about what he did ahead of time." Ware then requested an attorney and terminated his statement.

Ware was charged with two counts of first degree murder. In the Circuit Court of Cook County, Illinois, Ware moved to quash his November 11, 1990 arrest and suppress the handgun found during that arrest (which would later be identified as McDonald's). During the suppression hearing, Chicago Police Officer David Lemieux testified that he had responded to a disturbance at 6121 South Calumet Street, which he knew to be an area where the police made frequent narcotics arrests. Lemieux saw Ware walking quickly out of the vestibule of the building at that address and approached him intending to talk to him. As Lemieux neared the petitioner, he noticed a bulge in the defendant's pocket and announced his presence as a police officer. Lemieux conducted a protective pat-down of the defendant and found the gun. Ware claimed that he purchased the gun from a man in the building. Ware told a different story, but the circuit court denied the motion to quash the arrest and Ware proceeded to trial.

At the close of all the evidence, Ware objected to the publication of the photographs taken of him after his arrest and of the photographs of the victims, but was overruled. The jury convicted Ware on two counts of first degree murder and Ware was sentenced to natural life imprisonment.

II.     Procedural History

Ware appealed to the Illinois Appellate Court arguing that (1) the circuit court erred in denying his motion to quash his arrest and suppress evidence of the handgun because Officer Lemieux lacked specific and articulable facts to justify the stop and frisk, (2) the circuit court erred in granting the State's motion *in limine* to exclude evidence of a polygraph test of the employee who found the two murder victims, and (3) the circuit court abused its discretion in allowing two post-arrest photographs taken of him and ten pictures of the victims to be submitted to the jury.

The Illinois Appellate Court affirmed Ware's conviction on June 7, 1994, holding that the circuit court's finding that the stop and frisk was reasonable under *Terry v. Ohio*, 329 U.S. 1 (1968). The court held that given the officer's experience with the area as one in which weapons and narcotics arrests were frequently made, the report of possible criminal activity, and Ware's suspicious conduct provided specific, articulable facts such that the stop of Ware was reasonable. The court further held that it was reasonable for Lemiuex to suspect that he and his partner were in danger because of the weapon-like bulge in Ware's pants. The Illinois Appellate Court went on to rule that Ware had failed to object to the state's motion *in limine* to exclude the polygraph exam and had also failed to include in the record on appeal a report of the initial proceedings in the trial court, and so had waived that issue on appeal. Finally, the court rejected Ware's argument that his post-arrest photographs and the photographs of the victims were irrelevant, finding that the circuit court did not abuse its discretion in admitting them.

Ware then appealed to the Illinois Supreme Court raising only one issue: that the trial court erred in denying the motion to quash his arrest and suppress the evidence of the handgun. The Supreme Court denied his petition for leave to appeal on October 6, 1994.

On June 20, 1995, Ware filed a *pro se* petition for post-conviction relief with the Circuit Court of Cook County, alleging multiple ineffective assistance of trial counsel claims. The state trial court summarily denied Ware's petition and he appealed to the Illinois Appellate Court, which affirmed the trial court's dismissal, ruling that "the scope of post-conviction review is limited by the doctrines of *res judicata* and waiver, . . . and although ineffecitve assistance of counsel claims are cognizable under the [Illinois Post-Conviction] Act, . . . those raised by [Ware] in this case [are]

insufficient to warrant further proceedings." The Illinois Supreme Court denied Ware's petition for leave to appeal.

In November 1996, Ware filed a petition for *habeas corpus* relief in the Northern District of Illinois, raising seven claims alleging ineffective assistance of trial counsel. But in November 1997, Ware realized he wished to pursue additional constitutional issues and filed a motion to dismiss his petition so that he could first exhaust these constitutional issues in state court. Judge Leinenweber[2] denied Ware's motion, but stayed the proceedings until Ware exhausted his state remedies.

On January 5, 1998, Ware filed a second post-conviction petition with the Circuit Court of Cook County, this time alleging multiple claims that his appellate counsel had been ineffective. The second petition for post-conviction relief met a similar fate as the first. The circuit court summarily denied it, and the state appellate court affirmed, this time on multiple grounds: (1) that the petition was untimely; and (2) that the petition contained no issues of arguable merit. The Illinois Supreme Court again denied leave to appeal.

After his second petition for post-conviction review in the state court was denied, Ware returned to this Court and amended his petition for *habeas corpus* adding the ineffective assistance of appellate counsel claims as well as some claims of error by the Illinois Appellate Court.

III. Standard of Review

Because Ware filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §2254, that statute governs this Court's analysis of his petition. *Hardaway v. Young*, 302 F.3d 757, 761 (7th Cir. 2002). Under AEDPA, a petitioner

---

[2] When Ware filed his petition it was assigned initially to Judge Leinenweber and it has since been reassigned to this Court.

5

is not entitled to a writ of *habeas corpus* unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" by the Supreme Court. *Williams*, 529 U.S. at 405-06. A state court's decision is an "unreasonable application" of federal law if the state court identified the correct legal rule but unreasonably applied it to the facts of the case. *Id.* at 407; *Matheney v. Anderson*, 253 F.3d 1025, 1041 (7th Cir. 2001).

Furthermore, in conducting a *habeas* review, this Court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States and cannot consider errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996). Thus, Ware's claims regarding errors committed by the Illinois Appellate Court are not cognizable. Ware argues that Illinois Appellate Court erred in affirming: (1) the trial court's denial of his motion to suppress; (2) the trial court's decision to allow photographs of the victims to go to the jury; (3) the trial court's decision granting the state's motion *in limine* barring polygraph results of a state witness; and (4) the trial court's denial of his second post-conviction petition. None of these alleged errors raise a constitutional argument, but instead claim that the state court erred in applying its own laws, and as such are all non-cognizable. *Estelle*, 502 U.S. at 67-68; *Smith v. Phillips*, 455 U.S. 209, 221, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

This leaves Ware with seven ineffective assistance of trial counsel claims and eight ineffective assistance of appellate counsel claims. Ware argues that his trial attorney was ineffective because he:

6

(1) failed to investigate his alibi defense; (2) failed to contact and interview a favorable witness named "Freaky;" (3) failed to adequately prepare for trial; (4) advised him that it would be in his best interest not to testify; (5) failed to challenge oral statements alleged to have been made by petitioner; (6) failed to file a motion to suppress evidence of his arrest; and (7) called an unfavorable witness to testify. Ware next raises a host of similar claims against his appellate attorney, alleging that appellate counsel: (1) failed to argue that trial counsel erred in allowing the prosecution to mischaracterize the evidence; (2) failed to argue that trial counsel never raised an alibi defense; (3) failed to argue that trial counsel erred in stipulating to the testimony of a lab technician; (4) failed to argue that trial counsel did not interview a potential witness; (5) failed to argue that trial counsel failed to call certain witnesses; (6) failed to argue that trial counsel had not challenged statements Ware allegedly made; (7) failed to argue that trial counsel had not challenged the jury's verdict; and (8) raised conflicting issues on appeal.

### IV. Analysis

#### A. *Procedural Default*

Before addressing the merits of Ware's petition, the Court must first determine whether any of his claims are procedurally defaulted. In order to raise a constitutional challenge to a state court conviction and sentence in a federal habeas proceeding, the petitioner must have fully and adequately presented the challenge to the state courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir.2001); *see also Rittenhouse v. Battles*, 263 F.3d 689, 697 (7th Cir. 2001) (holding that *Boerckel* is applied retroactively to petitions filed prior to the United States Supreme Court's decision). A petitioner's claims are also procedurally defaulted where a state court relied upon an adequate and independent

7

state procedural ground as the basis for its decision, barring the petitioner from raising that claim in a petition for federal *habeas corpus* review. *Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989); *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002); *Aliwoli v. Gilmore*, 127 F.3d 632, 633 (7th Cir. 1997). A petitioner, however, can cure his procedural default in a federal *habeas corpus* proceeding by showing good cause for the default and actual prejudice resulting from the errors of which he claims or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *United States v. Frady*, 456 U.S. 152, 168, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002).

All of Ware's ineffective assistance of appellate counsel claims are procedurally defaulted and he makes no argument of just cause, actual prejudice, or miscarriage of justice regarding those claims. Ware was convicted on August 28, 1992 and the Illinois Supreme Court denied Ware's petition for leave to appeal on October 6, 1994. But Ware did not raise his ineffective assistance of appellate counsel claims until his second state petition for post-conviction relief, filed on January 5, 1998—nearly three years *after* the deadline for filing such a petition. The Illinois Appellate Court held that Ware's second state petition for post-conviction relief was untimely. Under Illinois law, petitions for post-conviction relief must be commenced no later than "6 months after the denial of a petition for leave to appeal . . . or 3 years from the date of conviction, whichever is sooner, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c); *People v. Woods*, 193 Ill. 2d 483, 488-89, 739 N.E. 2d 493, 496 (2000); *People v. Cortez*, 788 N.E. 2d 243, 249-50 (Ill. App. Ct. 2003); *Gray v. Briley*, 305 F.3d 777, 778 (7th Cir.

8

2002); *Brooks v. Walls*, 301 F.3d 839, 841-42 (7th Cir. 2002).[3] Thus, in denying Ware's post-conviction petition, the state court explicitly relied on an adequate and independent procedural bar. As noted above, the Illinois Appellate Court also touched upon the merits of Ware's second post-conviction petition, holding that it contained no issues of arguable merit. But so long as a "state court explicitly invokes a state procedural bar rule as a basis for decision," a federal court must respect both aspects of a dual-ground holding. *See Harris*, 489 U.S. at 264 n.10. Accordingly, all eight of Ware's ineffective assistance of appellate counsel claims are procedurally defaulted.

The state argues that Ware's ineffective assistance of trial counsel claims are also procedurally defaulted. Ware raises for the first time in this petition his claim that his trial counsel called an unfavorable witness, and because he never presented that claim to the state court it is procedurally defaulted. But Ware raised the six remaining ineffective assistance of trial counsel claims in his first state petition for post-conviction relief. In denying those claims, the Illinois Appellate Court held that "the scope of post-conviction review is limited by the doctrines of *res judicata* and waiver, . . . and although ineffective assistance of counsel claims are cognizable under the Act, . . . those raised by [Ware] in this case [are] insufficient to warrant further proceedings." The state suggests that the Illinois Appellate Court thus denied Ware's claims because it found that he had waived them. The Court disagrees. The state court does expressly refer to the principles of *res judicata* and waiver, but never explicitly applies either procedural bar to the facts of Ware's petition. Instead, the state court

---

[3] At the time Ware filed his *first* petition for post-conviction relief, the operative language of the statute allowed petitions for post-conviction relief to be filed within six months after the Illinois Supreme Court denied leave to appeal or within three years after the date of conviction, whichever was *later*. Thus Ware's first petition for post-conviction relief, which was filed within three years from the date of his conviction, was timely, even though it was filed more than six months after the date the Supreme Court denied leave to appeal.

concludes that Ware's claims were insufficient to warrant further proceedings, citing *People v. Mendez*, 221 Ill. App. 3d 868, 872-73, 582 N.E. 2d 1265 (1991) (engaging in a *Strickland* analysis). The adequate and independent state grounds doctrine does not bar *habeas* review unless the state court actually relied on the procedural bar as an independent basis for its decision. *Harris*, 489 U.S. at 261-62. The reliance on the procedural bar must be both clear and express. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002); *United States ex rel. Bell v. Pierson*, 267 F.3d 554, 556 (7th Cir. 2001) (holding that procedural default did not bar claim where state court expressly mentioned waiver, but did not apply it to the petition before it). Accordingly, the Court finds that Ware has not procedurally defaulted the six claims of ineffective assistance of trial counsel that he raised in his petition for post-conviction relief.

B.     *Ineffective Assistance of Trial Counsel Claims*

Ware must establish that the Illinois Appellate Court's denial of his ineffective assistance of trial counsel claims is an unreasonable application of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, Ware was required to prove not only that counsel's performance fell below an objective standard of reasonableness, but also that he was prejudiced by counsel's performance. 466 U.S. at 687; *Wright v. Gamley*, 125 F.3d 1038, 1041 (7th Cir. 1997). In order to establish prejudice, Ware must show that counsel's performance created a "reasonable probability" that but for counsel's errors, the result of the proceeding would have been different. *Liegakos v. Cooke*, 106 F.3d 1381, 1386 (7th Cir. 1997); *see also Strickland*, 466 U.S. at 694 ("a reasonable probability is a probability sufficient to undermine confidence in outcome"). Review of counsel's performance must be highly deferential so as to avoid second-guessing and must be

judged in light of all of the facts and circumstances of the particular case at the time of counsel's decision. *Strickland*, 466 U.S. at 689-90.

1. Failure to Investigate Alibi Defense

Ware claims that he was arrested on November 11, 1990 at 1:30 a.m. and held in custody until 3:00 a.m. (at the latest) on November 12. Ware further claims that the victims' bodies were not discovered until the afternoon of November 12 by David Williams. Williams initially told police that he had seen the victims alive on November 11, but later recanted his story and told the police that he had found the bodies on November 12. Ware also points out that the medical examiner could not establish a time of death. Ware contends that he could not have murdered the victim because he was in police custody during the time of the murder (as established by Williams' supposed November 11 sighting of the victims), and his counsel should have investigated his alibi defense. Ware's argument is without merit. All of the facts that Ware claims establish his alibi defense were made known to the jury. The jury heard both versions Williams' story, and chose not to believe the story Williams initially told the police (that he had seen the victims alive on November 11). The jury knew Ware was in custody on November 11. The jury knew that the medical examiner could not establish a precise time of death. And yet the jury nonetheless chose to reject Ware's alibi defense. Ware argues that his attorney should have done more. But attorneys are not required to pursue every defense a defendant wants to raise, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on the investigation . . .[i]n other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Ware points to no additional facts that counsel would have unearthed

11

to bolster those already presented to the jury and thus trial counsel's failure to investigate Ware's purported alibi defense cannot be unreasonable.

2. Failure to Interview "Freaky"

Ware next argues that his counsel should have located a friend of his, known only as "Freaky." According to Ware, Freaky could confirm that Ware had purchased the alleged murder weapon from a friend of Freaky's, thus refuting the state's witness who testified that Ware possessed McDonald's gun, the murder weapon, when he was arrested on November 11. But Ware supplied his counsel with neither Freaky's legal name, nor his address. "An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) (citing *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir.2000); *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 957-58 (7th Cir.1986)). Furthermore, a petitioner must make a "'specific, affirmative showing as to what the missing evidence or testimony would have been.'" *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991) (quoting *United States ex rel. McCall v. O'Grady*, 908 F.2d 170, 173 (7th Cir. 1990)). Thus, the "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Under these circumstances, trial counsel's decision not to pursue this shaky lead is not unreasonable and Ware's second ineffective assistance of trial counsel claim also fails.

3. Failure to Prepare for Trial

Ware next contends that his trial counsel met with him only briefly in preparing for trial, and therefore was ineffective. Ware points to no specific trial strategy that might have been furthered had counsel conferred with him more frequently. Furthermore, Ware has not alleged that counsel was unfamiliar with the factual details of the case or ill-prepared to cross-examine witnesses. This is not a case where trial counsel did *nothing*. *See, e.g., Williams v. Washington*, 59 F.3d 673, 680-681 (7th Cir. 1995) (holding that lack of basic familiarity with discovery materials provided by the state made counsel's behavior objectively unreasonable under *Strickland*). Counsel is not required to spend any specific number of hours preparing for trial. *Sullivan v. Fairman*, 819 F.2d 1382, 1391 (7th Cir. 1987). The evidence against Ware was overwhelming. The state had three different confessions from Ware: one given to police, one to an assistant state's attorney, and one related by his uncle to the police. Ware fails to point to anything that would suggest that had counsel spent more time discussing the case with him, the outcome of the proceedings would have been different.

4. Ware's Right to Testify

Ware also claims that trial counsel was ineffective because he advised him not to testify. Ware claims that had he testified, he could have presented his version of events to the jury. Ware's claim is frivolous. It is true that the right to present a defense includes a right to testify on her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). But Ware never alleges that trial counsel prevented him from testifying—only that he advised him not to do so. Such advice is frequently given when a defendant's prior convictions could be entered into evidence or when inconsistent or inculpating testimony could be elicited during cross-examination. *Rodriguez v. United States*, 286 F.3d 972, 977 (7th Cir. 2002); *Liegakos*, 106 F.3d at 1386; *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991). Ware does not contend that trial counsel failed to explain to him

13

the advantages and disadvantages of testifying. Indeed, Ware admits that his attorney did discuss with him the danger that would be posed by the state's cross-examination. Absent any allegation that counsel forbade him from testifying or failed to explain the relative advantages and disadvantages of testifying so that Ware could make an informed decision, Ware's claim must fail.

5. Failure to Suppress Arrest and Confessions

Ware's final two claims can be disposed of quickly as well. Ware argues that trial counsel was ineffective because he failed to move to suppress his arrest (and evidence gathered as a result of that arrest) and also his confessions. Counsel did file a motion to quash and suppress evidence regarding his November 11, 1990 arrest for unlawful use of a weapon. Ware contends that counsel should also have filed such motions regarding his subsequent arrest for murder. But by the time Ware was arrested for murder, he had already confessed to the crime. And a confession provides more than sufficient evidence to provide probable cause for an arrest. Furthermore, an illegal arrest does not void a subsequent conviction, *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), and so counsel's inaction does not fall below an objective standard of reasonableness unless Ware can establish that his conviction is otherwise void, which he has failed to do.

Ware also claims his trial counsel should have moved to suppress his confessions. Ware submits an affidavit in which he claims the police threatened him and he only confessed because he feared for his life. Ware's only support for his claim is a self-serving affidavit submitted more than *nine* years after the alleged coerced confession. And even his self-serving affidavit contains a fatal flaw: Ware alleges that the *police* elicited a coerced confession from him, but Ware repeated the confession to a assistant state's attorney, and he makes no claim that the assistant state's attorney threatened him in any way. Furthermore, even if Ware's self-serving affidavit is true, he cannot

14

establish that he was prejudiced by his attorney's inaction because the evidence even without the two confessions was overwhelming: he was found with the murder weapon shortly after the crimes and his own uncle testified that he admitted (prior to his confession to the police) to killing the victims.

V. Conclusion

The state court decision denying Ware's ineffective assistance of counsel claims is neither contrary to or an unreasonable application of Supreme Court precedent. For the foregoing reasons, Ware's petition for a writ of *habeas corpus* is DENIED.

IT IS SO ORDERED

6/9/03
Dated

The Honorable William J. Hibbler
United States District Court